## CANTON LUMBER COMPANY *vs.* WM. A. LILLER.

*Inconsistent Instructions to Jury—Measure of Damages for Breach of Contract to Supply Certain Kinds of Lumber— Evidence of Statements of Third Party.*

When the question is whether a quantity of lumber, which was sold as being in conformity with certain specifications, was rejected by the inspectors because not in conformity with those specifications, or because not in accordance with the inspectors' view of its fitness apart from the specifications, a prayer instructing the jury that there is no evidence of fraud or bad faith on the part of the inspectors is not in conflict, so as to mislead the jury, with another prayer, instructing them that the inspection should have been made, not in ac-

cordance with the inspectors' view of the fitness of the lumber for the purpose in hand, but in accordance with the specifications.

A judgment will not be reversed on account of inconsistency between granted instructions unless it be such as may reasonably be supposed to have misled or confused the jury.

In an action to recover damages for breach of defendant's contract to deliver lumber of a designated kind, at a certain time and place, to be used by the defendant in building a coal tipple, etc., for a railway company, the plaintiff is entitled to recover the expenses caused by the delay in getting other lumber in place of that furnished by the defendant and rejected for cause; the increased cost of construction by reason of the necessity of doing the work in the winter instead of in the summer; the freight paid by the plaintiff on the rejected lumber, and the cost of unloading the same. These elements of damage may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract.

Plaintiff bought a quantity of lumber from defendant under a contract which required it to be inspected according to certain specifications by the agent of a third party, for whose structure plaintiff was to use the lumber. *Held,* that evidence of this agent's declarations is not admissible in an action for breach of the contract since he was not the plaintiff's agent.

*Decided January 11th, 1910.*

Appeal from the Baltimore City Court (DOBLER, J.).

*Defendant's 1st Prayer.*—If the jury believe from the evidence that the plaintiff entered into a contract with the defendant whereby the defendant was to deliver on cars at the City of Baltimore four hundred and ten thousand feet of lumber, according to certain specifications written upon the blue print offered in evidence, of certain specified lumber which had to be of special sizes and lengths, and which had to be prepared and cut to be used for a special purpose and in conformity with a memorandum of certain sizes and

lengths, and to be used by the plaintiff in the erection of a
coal tipple, sand house, etc., which had been specially de-
signed by the Baltimore and Ohio Railroad as described in
the evidence, at the round price of twenty dollars per thou-
sand feet, and if planed on one or two sides fifty cents addi-
tional per thousand feet, and if planed on three or four sides
seventy-five cents per thousand additional, and that the de-
fendant did cut and cause to be prepared the lumber of the
dimensions and lengths as mentioned in the revised list fur-
nished by the plaintiff, and loaded the same upon cars at the
City of Baltimore and consigned the same to the plaintiff at
Keyser, West Virginia, and if the jury shall further find
that after the destination of said lumber the same was by the
agents of the Baltimore and Ohio Railroad inspected at a
higher standard of quality than that laid down upon the blue
print specifications offered in evidence, or if the jury shall
believe that the B. & O. inspectors inspected the lumber from
their own ideas of its fitness for the purposes for which it
was to be used, and did not inspect it by the specifications
written upon the blue print offered in evidence by which it
was sold, then the inspection was not in accordance with the
contract of sale, and their verdict must be for the defendant.
(*Granted.*)

*Defendant's 2nd Prayer.*—The defendant prays the Court
to instruct the jury that if they believe from the evidence
that the plaintiff entered into a contract with the defendant
whereby the defendant was to prepare, cut and saw certain
specified lumber of certain dimensions and lengths which
was intended to be used for a special purpose in the erection
of a coal tipple, etc., for the Baltimore & Ohio Railroad at
Keyser, West Virginia, as testified to by the plaintiff, and
that the defendant did saw and cut the lumber of these di-
mensions and lengths as required by the revised list delivered.
by the plaintiff to defendant, and the defendant did load the
same on board cars at the City of Baltimore and consign the
same to the defendant at Keyser, West Virginia, amounting
in the aggregate to four hundred and ten thousand feet, at

and for the round price of twenty dollars per thousand, and that some of the lumber so cut and delivered was of greater value because of its quality and lengths, and other parts thereof so sawed, cut and delivered were of a lesser value than twenty dollars per thousand, and if they shall further find that upon the destination of the lumber the plaintiff unloaded the same and a part thereof was cut up and used by the plaintiff in the erection of the trestle work (a part of the coal tipple contract with the Baltimore & Ohio Railroad), without the consent of the defendant to such user, that such act on the part of the plaintiff was an acceptance of the whole quantity of lumber shipped and unloaded, notwithstanding upon inspection thereof by the B. & O. inspectors, the whole of said lumber was condemned, then their verdict must be for the defendant. (*Refused.*)

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that if they shall believe from the evidence that the plaintiff entered into a contract with the defendant, whereby the defendant was to deliver on cars at the City of Baltimore, four hundred and ten thousand feet in accordance with certain specifications written upon the blue print offered in evidence, certain specified lumber, which had to be of special sizes and lengths, and which had to be prepared and cut to be used for a special purpose and in conformity with a memorandum of certain sizes and lenghts, and to be used by the plaintiff in the erection of a coal tipple, sand house, etc., which had been specially designed by the Baltimore & Ohio Railroad as described in the evidence, at the round price of twenty dollars per thousand, and if planed on one or two sides, fifty cents additional per thousand, and if planed on two or three sides, seventy-five cents per thousand additional, and that the defendant did cut and cause to be prepared lumber of the dimensions and lengths as mentioned in the revised list furnished by the plaintiff, and loaded the same on cars at the City of Baltimore, and consigned the same to the plaintiff at Keyser, West Virginia, and that said lumber did conform to the specifications writ-

ten upon said blue print, and shall further find that the defendant did not sell and agree to deliver the lumber subject to B. & O. inspection, if they shall so find, then their verdict must be for the defendant, notwithstanding the lumber was condemned by the inspectors of the Baltimore & Ohio Railroad.    (*Granted.*)

The cause was argued before BRISCOE, PEARCE, SCHMUCK ER, BURKE and THOMAS, JJ.

*Charles E. Siegmund* and *James McEvoy, Jr.,* (with whom were *Willis & Homer* on the brief), for the appellant.

*Alenzo L. Miles.* (with whom were *Wm. E. Ambrose* and *Luther E. Mackall* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is the second appeal in this case, the former appeal being reported in 107 Md., page 146, the defendant below being the appellant in both appeals. At the first trial the case was tried upon the general issue plea, and there was no change in the pleadings at the second trial. The declaration charged that Canton Lumber Company of Baltimore City agreed to sell and deliver to William A. Liller on or before July 1st, 1903, all the necessary lumber for the erection at Keyser, West Virginia, for the Baltimore and Ohio R. R. Co. of an ash pit, coal tipple and sand house, said lumber to conform to specifications set out in the declaration and to be subject to the B. & O. R. R. Co's. inspection; the plaintiff to pay for the lumber at the rate of $20 per thousand feet; but that the defendant did not deliver lumber conforming to said specifications, nor within the required time, and that the lumber delivered was inspected by the B. & O. R. R. Co. as provided, and was rejected as not complying with said specifications; and that because of said breach of contract the plaintiff was obliged to purchase in open market about 466,837 feet of lumber at a price in excess of that agreed

upon between the plaintiff and defendant and to incur large additional expense on account of the delay in procuring other lumber, the whole loss to the plaintiff being the sum of $8,961.21. That trial resulted in a verdict for plaintiff for $3,350.

In the opinion in the former appeal, the evidence, as it appeared in the record, was set out with much fullness, and the appellee in the present appeal claimed, without contradiction by the appellant, that the evidence was substantially the same at the second as in the former trial. We have compared the records in this respect, and we have discovered nothing in the testimony in the present record which materially altered the presentation of the case.

On the former appeal we found no error in any of the rulings on the evidence, nor in granting any of the plaintiff's prayers, nor in refusing any of the defendant's prayers except its third prayer, which we held ought to have been granted, and the judgment was reversed solely for that error. In this appeal the plaintiff offered five prayers all of which were granted, being literal copies of prayers offered by the plaintiff granted at the former trial, and approved in the former appeal. These prayers are founded upon propositions of law which we still think correct, and are based upon legally sufficient evidence contained in the present record. These may be seen upon reference to the report of the former appeal.

The defendant's first prayer in this case was granted, being substantially its third prayer in the former case which we there held should have been granted. It differs from the third prayer in the former case only in the introductory part, but asserts the precise legal proposition which we held correct in the former appeal and in the language which we there approved, viz: "and if they further find that said lumber was by the agents of the Balto. & Ohio Railroad inspected at a higher standard of quality than that laid down upon the blue print specifications offered in evidence, or if the jury shall believe that the B. & O. inspectors inspected the lum-

ber from their own ideas of its fitness for the purposes for which it was to be used, and did not inspect it by the specifications written upon the blue print offered in evidence by which it was sold, then the inspection was not in accordance with the contract of sale and their verdict must be for the defendant." The sole error which we discovered in the former trial was thus corrected in the second trial.

The defendant's second and third prayers we shall request the reporter to set out fully. Its second prayer though differing somewhat in verbiage from its second prayer in the former case presents the same legal proposition which we considered in the former case, and which we there held to be properly refused, viz, that the use of part of the lumber delivered which did pass inspection was an acceptance by the plaintiff of all the lumber delivered, and we find no reason upon this reargument to alter our view in this regard.

The defendant's third prayer was also granted so that the only ground of objection so far as the prayers are concerned is to the rejection of its second prayer which we have said was properly rejected, and to the granting of the plaintiff's prayers which we have also said were properly granted.

At the argument upon the prayers, Mr. Siegmund of appellant's counsel admitted that if the plaintiff's first prayer, and defendant's first and third prayers had been the only instructions granted, the defendant would have had no cause of complaint, but it was contended that plaintiff's fourth prayer, which instructed the jury that there was no legally sufficient evidence of fraud or bad faith on the part of the B. & O. R. R. Co.'s inspectors, was in conflict both with plaintiff's first, and defendant's first prayer.

It is, of course, error to grant prayers which are inconsistent in theory, and by which therefore the jury must be misled.

This objection was not made on the former appeal, though the case was vigorously contested throughout, and the plaintiff's first and fourth prayers were the same in both cases; and it seems to have been made here as an after thought, the

granting of the defendant's first prayer in this case having corrected the real ground of complaint in the former case. The fraud referred to in the plaintiff's first and fourth prayers is wilful deliberate fraud, originating in corrupt purpose to make a dishonest inspection, but the jury were distinctly told by the defendant's first prayer that if for any reason, the inspectors mistakenly and incorrectly inspected the lumber by a higher standard than that provided by the blue print their verdict must be for defendant. We can perceive no conflict in the prayers mentioned nor anything misleading to the jury. In *Gary* v. *Sangston,* 64 Md. 39, JUDGE MILLER said: "Cases may no doubt be found in which this Court has reversed judgments on account of the granting of inconsistent instructions, but an examination of them will show that the instructions were such as to afford good reason for supposing they may have had the effect of misleading or confusing the minds of the jury; but in a case (like this) where there is no reasonable ground for such a supposition, it would be trifling with trial by jury and with justice itself to reverse the judgment and deprive the plaintiffs of the benefit of the verdict."

There were three exceptions to the rulings on the evidence.

When the plaintiff was on the stand he testified that it cost him to purchase in open market the necessary lumber to replace rejected lumber $2,683.43 over the contract price of the rejected lumber. He was then asked to state just what his other damages, if any were, itemizing them as he proceeded, and objection to that question being overruled the first exception was taken. The objection would seem to have been prematurely taken, but it appears from the record that the testimony which followed, and itemized the elements of damage, was all regarded as subject to exception. The items of damage thus testified to, or the principal items were cost involved in the delay in getting lumber upon the ground in place of the rejected lumber, and increased cost of construction by reason of the necessity of performing the work in the winter instead of the summer; freight paid by the plain-

tiff on condemned lumber, not used, and cost of unloading same. The amount of all these items, the actual cost, was definitely stated—so that the jury was not left at large to indulge in speculation or guess work. The question thus raised therefore is whether these elements of damage may be reasonably supposed to have been within the contemplation of the parties at the time of making the contract. The *general* rule in ordinary cases by vendee against vendor for breach of contract to deliver goods, is that the measure of damages is the difference between the contract price and the market price at the time and place of delivery, but this rule is always subject to modification, where other damage necessarily or proximately incident to the breach of contract, can be held to have been in the contemplation of the parties. *W. U. Tel. Co.* v. *Lehman,* 107 Md. 448. In the case before us the defendant knew at the time the contract was made for what purpose the lumber was required, and how important it was that the lumber should conform in dimensions and quality with the bill furnished and the specifications provided. The defendant contracted to deliver the lumber by July 1st, but did not complete delivery before the middle of August. After the lumber had been inspected and a large part of it rejected, it required time to purchase and assemble other lumber of the necessary dimensions and quality and the result was that instead of being able to complete the structures during good weather and long working days of summer and fall much of that work was done during the unfavorable weather and shorter days of winter, and on the former appeal we held in granting plaintiff's seventh prayer that the jury might take all these matters into consideration. The plaintiff's fifth prayer in the present case is a transcript of the seventh prayer in the former case and for the reasons stated we are of opinion it stated the correct measure of damages under the circumstances of the case.

The second and third exceptions may be considered together as they both relate to the exclusion of statements made by Mr. Alexander to Mr. Berryman, or conversations be-

tween them.  Mr. Berryman was general manager of the defendant and he testified, "that during the inspection he had an interview with Mr. Alexander, who he understood represented the B. & O. and who had come to witness' office and wanted to know where the lumber was that he was to inspect for the coal tipple for Mr. Liller; that witness directed him as requested to the works and that Mr. Alexander made an inspection."  Mr. Alexander is not shown to have been an agent of Mr. Liller.  He was clearly the agent of the B. & O. to make *its* inspection, an inspection the result of which made in good faith bound both parties to this suit. Alexander was not a party and had not testified in this case; neither was he the plaintiff's agent in making this inspection, and therefore no question arises as to the right of Alexander to bind plaintiff by his statements made out of his presence and hearing.  What he *did* in making this inspection the parties were entitled to know, and this the trial judge allowed. To have gone further, and allowed Alexander's unsworn statements to be admitted in evidence would have been to admit mere hearsay, not brought within any of the exceptions to that rule, and there was no error in this ruling.

> *Judgment affirmed with costs to the appellee above and below.*